[Civ. No. 1747.   First Appellate District.—February 17, 1916.]

P. J. O'BRIEN et al., Appellants, v. ANNIE REARDON et al., Respondents.

ACTION TO SET ASIDE DECREE OF DISTRIBUTION — FRAUD — PRIOR PRO-CEEDING FOR LETTERS—RES ADJUDICATA.—A decree denying an application for letters of administration upon an estate which had been finally settled and the property distributed, based upon the ground that the court by false testimony was deceived as to the character of the distributed property, is *res adjudicata* as to a subsequent action brought by the applicant for letters to set aside and vacate the decree of distribution upon the same ground.

ID.—CHARACTER OF PROPERTY—SUFFICIENCY OF EVIDENCE.—In this action to vacate a decree of distribution on the ground that fraud was committed upon the court as to the character of the distributed property, it is held that the evidence warranted the conclusion that the property claimed by the plaintiffs to be the separate property of the deceased was in fact the community property of the deceased and her husband.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial.   J. R. Welch, Judge.

The facts are stated in the opinion of the court.

J. C. Black, for Appellants.

A. A. Caldwell, for Respondents.

LENNON, P. J.—The plaintiffs, P. J. O'Brien and Harold Costello (a minor, acting through his guardian *ad litem*), bring this suit for the purpose of having vacated and set aside a decree of the probate court of the county of Santa Clara distributing to Annie Reardon, in the matter of the estate of Annie Nelson, deceased, the real property described in the complaint. Annie Reardon, a daughter of said deceased, and C. O. Nelson, the surviving husband, are made defendants; and it is charged that they "entered into a conspiracy by fraud and falsehood to capture the said property, and with the intent by fraud and falsehood to defraud the plaintiffs out of their lawful interest as heirs at law in the estate of Annie Nelson, deceased"; that to accomplish their ends they "alleged, asserted, and gave out that the whole of the property of Annie Nelson deceased was community property," knowing such assertion to be untrue; that the defendant Nelson, claiming it to be community property while knowing that it was the separate property of his deceased wife, made a conveyance to his codefendant of his title and interest therein as surviving husband; that the latter, as administratrix of the estate, caused it to be inventoried and returned to the probate court as community property, and petitioned the court for its distribution to herself as the grantee of the surviving husband of the deceased; that Annie Reardon, by false testimony, deceived the court and obtained from it the decree of distribution in question.

The defendants answered, denying the allegations of fraud, asserting that the property in question was in fact the community property of the spouses; that the decree of distribution which the plaintiffs attacked not having been appealed from, was *res adjudicata,* and had been so held by the supreme court of this state in a proceeding brought by the plaintiff O'Brien, in which practically the same allegations as to its invalidity had been made as in the present suit.

The matter came on for trial, and the plaintiffs introduced their testimony, at the conclusion of which the defendants

moved the court for a nonsuit upon various grounds, viz., that
the plaintiffs had failed to prove that they had any title or
interest to the property described in the complaint; that they
had failed to prove any fraud in the procurement of the de-
cree of distribution sought to be vacated; that the evidence
introduced by the plaintiffs failed to show that the said prop-
erty was the separate estate of Annie Nelson, deceased; and,
finally, upon the ground that the questions involved were also
*res adjudicata* by virtue of a second proceeding in the probate
court of the county of Santa Clara brought by said P. J.
O'Brien praying for letters of administration upon the said
estate to be issued to him.

Defendants' motion for nonsuit was granted in general
terms, and judgment entered thereon. Defendants appeal
from the judgment, and from orders of the trial court deny-
ing (1) a motion to correct their notice of intention to move
for a new trial, and (2) their motion for a new trial.

So far as previous litigation in the matter of this estate is
concerned, the record shows that Annie Nelson, wife of the
defendant C. O. Nelson, died in the county of Santa Clara in
February, 1910. Thereafter the defendant Annie Reardon, a
daughter of the deceased, applied for and was granted letters
of administration upon her estate. An inventory of the prop-
erty of the estate was filed, which included the real estate in-
volved in this action, but which was stated to be the commu-
nity property of the deceased and her surviving husband.
The latter executed to the administratrix a conveyance of his
title and interest in said real property, and in the decree of
distribution subsequently entered it was distributed to the ad-
ministratrix as such grantee. No appeal was taken from said
decree, and it is now in full force and effect.

Subsequently, and in December of the same year, the plain-
tiff herein, P. J. O'Brien, applied to the same probate court
for letters of administration upon the estate of Annie Nelson,
deceased, alleging that the real property already distributed
to Annie Reardon in the proceeding above mentioned was in
fact the separate property of the deceased and not community
property, and that the court had been imposed upon by the
fraudulent representations of said Reardon. The defendants
herein filed a contest to said petition, and, after a trial of the
questions involved, the probate court denied the petition, and
found and decreed that the said real property was the com-

29 Cal. App.—45

munity property of the deceased and her surviving husband, and that the decree of distribution theretofore made was legal, valid, and binding upon the plaintiffs herein as heirs at law of the deceased. Upon appeal by O'Brien the supreme court affirmed this second decree, and incidentally held that the decree previously entered not having been appealed from, was valid and binding upon plaintiff O'Brien and other heirs at law. (*O'Brien* v. *Nelson*, 164 Cal. 573, [129 Pac. 985].)

Upon the trial of this cause the facts above narrated appeared in evidence, and testimony was also introduced upon the question of whether the real estate in suit was the separate property of the deceased or community property.

As to the plaintiff O'Brien, it is immediately apparent that the motion for a nonsuit was properly granted upon the ground that the questions upon which his right to recover depend are *res adjudicata* by virtue of the prior proceeding brought by him and finally decided against him in the supreme court. It also seems clear that, if in fact the real property involved in this proceeding was the community property of Annie Nelson and C. O. Nelson, and that the testimony introduced in the plaintiffs' case so showed, then the allegations of fraud with which the complaint is so plentifully besprinkled fall of their own weight, and that neither of the plaintiffs made out any case.

From the evidence so introduced it was shown that the deceased in the year 1880 (her name at that time being Annie O'Brien) was a widow with three young children, earning her living by taking in washing. She became acquainted with the defendant Nelson, whom she subsequently married. In 1882, with the help of one hundred dollars borrowed from Nelson, she opened a small workingmen's boarding-house with a saloon attached at Second Street and Broadway in Oakland. In this venture she met with but indifferent success, for just prior to her marriage the following year she borrowed from Nelson a further sum of two hundred dollars, which was used in the furnishing of the boarding-house, of which, although consisting of only eight rooms, two were still completely unfurnished. Upon their marriage it was agreed between Nelson and his wife that the loan of three hundred dollars should not be repaid, but that whatever they possessed should be lumped together and considered as the family or community property.

Shortly after his marriage Nelson obtained employment at $75 per month, his duties consisting of lighting the street lamps in the evening and extinguishing them in the early morning. During part of the day he tended bar in the saloon and helped around the house. His wages were regularly turned over to his wife (who, in the language of the testimony, "carried the purse"), and were by her placed with the money received from the boarding-house and saloon, all expenses, both of the family and the business, being paid from such common fund. In 1884 a fire occurred in the saloon and boarding-house which destroyed part of the furniture. From an insurance company five hunded dollars was collected on account of this loss. At this time the Nelsons removed from Oakland to East San Jose, and purchased part of the real estate involved in this suit, the price of which was one thousand six hundred dollars. Five hundred dollars was paid down, and a note secured by mortgage given for the balance. From this time on Mrs. Nelson, whose health was not as robust as formerly, did no more work other than attending to her household duties. On the other hand, Mr. Nelson was continuously employed. Part of the property so purchased was subsequently sold; there is evidence of the mortgage being paid off, and of a subsequent mortgage being taken on the property, which in turn was satisfied with money earned by Nelson. At the time of the purchase of the property the deed was taken in the name of Mrs. Nelson, and the *habendum* clause therein stated that the land was bought with the separate funds of the grantee and was to be held as her separate property, but this was done in the absence of her husband and unknown to him, and he never consented thereto. However, upon a subsequent exchange of part of this property for other land, the deed, although taken in the name of Mrs. Nelson, contained no clause designating it as her separate property; and it may also be mentioned that these deeds were taken at a time when the presumption of law prevailed that real property taken in the name of either spouse was community property. The remainder of the real property involved in this proceeding, consisting of lots in the county of Santa Cruz, was acquired by the spouses during coverture by purchase. All taxes on all the real estate were paid by money earned by Nelson, and the land was always assessed in his name. He

never heard his wife claim that the property was other than community in character, and he always so regarded it.

With this evidence in the record upon the submission of the plaintiffs' case we think the trial court was entirely warranted in reaching the conclusion that the real property claimed by the plaintiffs to be the separate property of Annie Nelson, deceased, was in fact the community property of the deceased and her husband; that consequently the plaintiffs had failed to make out any case, and that their motion for nonsuit was properly granted.

If, as we hold, the nonsuit was correctly granted, it follows that the court did not err in denying the plaintiff's motion for a new trial, based as it was upon the insufficiency of the evidence to sustain the decision; and that, even if we assume that the plaintiffs' motion to amend their notice of intention to move for a new trial should have been granted, they suffered no prejudice by its denial.

The judgment and orders are affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 14, 1916.